WO                                                                                    SC

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Frank Jarvis Atwood, | No.  CV 20-00623-PHX-JAT (JZB) |
| Plaintiff, | |
| v. | **ORDER** |
| Panaan Days, et al., | |
| Defendants. | |

On March 25, 2020, Plaintiff Frank Jarvis Atwood, who is confined in the Arizona State Prison Complex-Eyman, filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983, a motion for injunctive relief (Doc. 3), and a brief (Doc. 4).   Plaintiff subsequently paid the filing and administrative fees (Doc. 9).   The Court will order Defendants Days, Arnold, and Shinn to answer the Complaint and Defendant Days and Shinn to respond to Plaintiff's motion for a preliminary injunction.

**I.      Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)-(2).

A pleading must contain a "short and plain statement of the claim *showing* that the

TERMPSREF

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

## II.   Complaint

In his two-count Complaint, Plaintiff alleges the denial of constitutionally adequate medical care and retaliation and violation of the Americans with Disabilities Act. Plaintiff sues Centurion, a private corporation that has contracted with the Arizona Department of Corrections (ADC) to provide health care for ADC inmates. In addition, Plaintiff sues Health Care Provider (HCP) Pamela Olmstead, a Centurion employee who works or worked at ADC's Eyman Complex. Plaintiff also sues the following current or former ADC employees:  ADC Director David Shinn and former director Charles Ryan;

Deputy Warden Panann Days; and Sergeant Arnold.[1]   Plaintiff seeks injunctive, compensatory, and punitive relief.

Except as otherwise indicated, Plaintiff alleges the following facts in his Complaint or brief for injunctive relief.[2]

### A.   Count I:

Plaintiff was diagnosed with progressive spinal disease in 1990. Plaintiff has used a brace and a transcutaneous electric nerve stimulator (TENS)[3] since 1991 and been prescribed medications for pain. In 2008 and 2010, CT scans revealed severe spinal damage, degenerative joint and disc disease, stenosis, scoliosis, and hypertrophic changes. A 2017 MRI reflected advanced stenosis for which cervical fusion was contemplated. Plaintiff is classified as an Americans with Disabilities Act (ADA) patient

---

[1]   A § 1983 suit against a defendant in his or her *individual* capacity seeks to impose personal liability upon the official. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). For a person to be liable in his or her individual capacity, "[a] plaintiff must allege facts, not simply conclusions, that show that the individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). By comparison, a suit against a defendant in his or her *official* capacity represents only another way of pleading an action against the entity that employs the defendant. *Kentucky*, 473 U.S. at 165. That is, the real party in interest is not the named defendant, but the entity that employs the defendant. *Id.* To bring a claim against an individual in his official capacity, a plaintiff must show that the constitutional deprivation resulted from the entity's policy, custom, or practice. *Id.*; *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978).

Although Plaintiff has named the individual defendants in both their individual and official capacities, Plaintiff's allegations fail to plausibly show that any policy, practice, or custom of any entity has resulted in his alleged injuries under § 1983. Accordingly, the Court will construe Plaintiff's § 1983 claims as directed against the Defendants in their *individual* capacities only and evaluate them accordingly.

[2]   Plaintiff refers to a previous case filed by him, *Atwood v. Gay*, No. CV 17-02682-PHX-JAT (JZB), concerning care for his medical conditions. That case was settled in 2019. The Court did not retain jurisdiction to enforce the terms of the settlements.

[3]   "TENS is a nonaddictive and noninvasive method of pain control that applies electric impulses to nerve endings via electrodes that are attached to a stimulator by flexible wires and placed on the skin. The electric impulses block the transmission of pain signals to the brain." *See* https://www.nationalmssociety.org/Glossary#T (last accessed Apr. 20, 2020).

and has been permanently "wheelchaired" since 2015.  (Docs. 1 at 4; 4 at 37-38.)  On December 11, 2018, Plaintiff received cervical fusion surgery.  (Doc. 4 at 40.)

### 1.        PT-Recommended Items

In January 2019, following his fusion surgery, Plaintiff's surgeon determined that he needed physical therapy (PT) twice weekly for some period.  From March to May, Plaintiff had twice weekly PT at or with Simons Physical Therapy.[4]  (Docs. 1 at 4; 3 ¶ 2.) In April or May, Plaintiff's therapists determined that Plaintiff needed parallel bars, a typewriter, a wheelchair table, a heating pad, an elastic band, and handicap bars "at all times" for rehabilitative PT ("PT-recommended items).[5]  (Docs. 1 at 4; 3 ¶ 3.)  They also determined that he needed a PT session to train him how to safely transfer to and from his wheelchair utilizing handicap bars for any transfer.

On May 23, 2019, Plaintiff met with Defendant Days regarding Plaintiff's request for the PT-recommended items.  Days refused to authorize the purchase, possession, or use of the items.  On June 13, 2019, Plaintiff submitted a grievance concerning the denial of permission to buy the PT-recommended items.  Following a June 26, 2019 meeting with Days, Plaintiff's grievance was denied.  In June and July, Plaintiff had an additional six sessions of PT at Banner Health, during one of which the therapist(s) focused on Plaintiff's posture when he transferred to and from his wheelchair using a handicap bar. (Doc. 3 ¶ 4.)

On January 18, 2020, Plaintiff submitted a Health Needs Request (HNR) concerning his decline absent the PT-recommended items.[6]  (Doc. 4 at 90, Ex. 32.)  On February 3, 2020, Defendant Olmstead saw Plaintiff about obtaining the PT-recommended items.   (Doc. 4 at 15 ¶ 18.)   Without conducting an "adequate

---

[4]  *See* https://www.simonsphysicaltherapy.com/ (last accessed Apr. 20, 2020). *See also* Doc. 4 at 44-52.

[5]  In his brief in support of his motion for injunctive relief, Plaintiff states that he already has access to parallel bars during recreation.  (Doc. 4 at 5.)  Accordingly, therefore, the Court finds that injunctive relief is moot as to this item.

[6]  In the Complaint, Plaintiff attributed the denial to Centurion and Days, but he has not alleged facts to support that Centurion played any role in the denial.

examination," Olmstead determined that the items were not medically indicated.  (Doc. 1 at 6.)  On February 6, 2020, Plaintiff submitted an Inmate Informal Complaint Resolution concerning the denial of permission to buy the PT-recommended items.  (Doc. 4 at 94.)  On March 8, 2020, Plaintiff submitted a grievance.  Plaintiff continues to suffer debilitation and physical and mental pain.

### 2.   TENS

On April 22, 2019, Plaintiff's Special Needs Order for the TENS was renewed.  But on July 12, 2019, Defendant Arnold seized Plaintiff's TENS unit despite being shown the Special Needs Order authorizing Plaintiff to have it.  Centurion "nursing" informed Plaintiff that Defendant Arnold's taking of [Plaintiff's] TENS" required Plaintiff to use it in the Health Unit.  (*Id.* at 5.)  Plaintiff's attempts to access the TENS via HNRs and oral requests "fell on deaf ears," resulting in severe pain, decreased mobility, and mental anguish.  (*Id.*)

On July 31, 2019, Plaintiff advised Defendant Arnold that he had possessed and used a TENS in his cell for 28 years, told him that Centurion staff were refusing to allow him to use it in the Health Unit, and asked for its return.  Arnold denied the request and refused to assist Plaintiff in using the TENS in the Health Unit.  Arnold told Plaintiff that his complaints would only cause him problems.  However, an August 21, 2019 grievance response resulted in the return of the TENS.  Ultimately, Plaintiff was not allowed to use the TENS for the six weeks that it was in the Health Unit.  (Doc. 4 at 14 ¶ 7, and 78.)

### 3.   Non-ADA Cell

Defendant Days' predecessor arranged for "handicap bars" in each cell in which Plaintiff was held in compliance with the ADA.  On July 15, 2019, Days told Plaintiff that she planned to move him to pod 6 of Able Cluster.  (Doc. 4 at 14 ¶ 10.)  Plaintiff noted that the area lacked handicap bars in the cells and shower; Days restated her decision to move Plaintiff there.  (*Id.*)  Following the move, Plaintiff struggled to crawl from his bunk, located a foot off the floor, into his wheelchair, falling several times onto the floor and injuring his shoulder.  (*Id.*)  Plaintiff experienced similar difficulties in

transferring to and from his wheelchair to the toilet and shower.  (*Id.*)  Plaintiff suffered "intense" pain and despair.  (Doc. 1 at 6.)

### 4.    Delayed and Missing Pain Medication

On August 5, 2019, "Centurion [staff] refused"' to provide Plaintiff his morning pain medication, tramadol.[7]  (Doc. 4 at 14 ¶ 11.)

On November 11, 2019, Plaintiff did not receive his afternoon dose of tramadol, because the supply had lapsed.  (Doc. 1 ¶ 18.)  Plaintiff was provided a substitute medication for a day or two, until tramadol was restocked.  (Doc. 4 at 15 ¶ 14.) Nevertheless, on November 17, nursing again told Plaintiff there was a lapse in the supply, and Plaintiff received no pain medication or substitute treatment, resulting in excruciating pain, cramping, and vomiting.  (*Id.*)  Plaintiff fell and hurt his shoulder and suffered stiffening, which continues to the present.  (*Id.*)

On January 6, 2020, Plaintiff did not receive his morning dose of tramadol.

Plaintiff did not receive his February 14, 2020 evening dose of tramadol until about 1:30 a.m. on February 15.  On February 15 and 27, Plaintiff did not receive his evening dose of tramadol.  After not receiving his February 15 evening dose, Plaintiff fell, hurting his ribs, and was taken to the Health Unit.  (Doc. 4 at 16 ¶ 19.)  On February 17, 2020, Plaintiff submitted an Inmate Informal Complaint Resolution ("Informal") concerning inconsistent provision of pain medication and resulting pain.  (Doc. 4 at 96.) Plaintiff did not receive a response to his February 17, 2020 Informal.

On February 26, Plaintiff did not receive his morning medications until noon.

Plaintiff did not receive his February 29 evening dose of tramadol until 2:30 a.m. on March 1, 2020, after prison staff "coerced" nursing staff.  (Doc. 1 at 7.)  On March 1, 2020, Plaintiff submitted an HNR regarding the delayed deliveries of pain medications and filed a grievance.  (Doc. 4 at 100 & 101.)  On March 12, 2020, Plaintiff submitted a grievance.

---

[7]  Plaintiff does not allege who specifically refused to provide his medication or facts to support that the refusal resulted from any policy, practice, or custom of Centurion to deny the medication.

On March 12, 2020, Plaintiff submitted another grievance.  (Doc. 4 at 106.)

On March 17, Plaintiff did not receive his morning dose of tramadol. Increasingly, according to Plaintiff, night medications are not being delivered until after 11:00 p.m.  Plaintiff believes that the increasing delays and irregularities in medication are retaliation for his complaints about delays and missed doses.[8]  (Doc. 4 at 16 ¶ 19.)

### 5.   Urology Procedures

On August 13, 2019, Plaintiff visited an outside urologist, who determined that Plaintiff needed a cystoscopy and, possibly, vaporization.  A Centurion provider agreed and recommended the procedure the same day.  In September, the procedures were approved.  On October 2, 2019, an HCP ordered pre-operative tests consisting of a chest x-ray, labs, and an EKG, which were completed.  (Doc. 4 at 15 ¶ 13.)

On December 11, 2019, Plaintiff submitted an Informal Resolution because more than 120 days had passed since the August 13 recommendation for cystoscopy and vaporization.[9]  Plaintiff received a response on December 17 and then saw an HCP on December 18 to discuss the delay.  (Doc. 4 at 15 ¶ 15.)  Plaintiff was told that the procedures had never been scheduled and that pre-operative tests would need to be performed again because of the lapse of time since they were performed.  (*Id.*; Doc. 4 at 84.)  On December 22, 2019, Plaintiff submitted a grievance regarding the delay in his

---

[8]  Plaintiff states that he suffers PTSD, for which he has been treated since 2011 with medications.  When anxious, Plaintiff's spinal pain allegedly increases, causing imbalance and falls.  (Doc. 4 at 16, Ex. 1 ¶ 20, and 111, Ex. 41.)

[9]  Plaintiff alleges that under Performance Measure 51 of the Stipulated Settlement in *Parsons v. Ryan*, CV 12-00601-PHX-ROS, a prisoner class action concerning medical care, Centurion had sixty days to complete the August 13, 2019 procedures.  *Parsons* does not afford a basis for relief.  *Parsons* was commenced prior to the tenure of either Corizon or Centurion.  Moreover, Plaintiff may not enforce a settlement entered in *Parsons* in a separate civil rights action.  *See Cagle v. Sutherland*, 334 F.3d 980, 986 (11th Cir. 2003); *Klein v. Zavaras*, 80 F.3d 432, 435 (10th Cir. 1996); *DeGidio v. Pung*, 920 F.2d 525, 534 (8th Cir.1990); *Green v. McKaskle*, 788 F.2d 1116, 1122-23 (5th Cir. 1986).  Standing alone, remedial orders and settlement terms, such as those entered in *Parsons*, cannot serve as a substantive basis for a § 1983 claim for damages because they do not create "rights, privileges, or immunities secured by the Constitution and laws." *Green*, 788 F.3d at 1123-24.  Rather, settlements and remedial decrees are the means by which unconstitutional conditions are corrected.  *Id.* at 1123.  Thus, Plaintiff may not properly seek § 1983 relief to enforce *Parsons* in this action and his allegations based on alleged non-compliance with *Parsons* will be disregarded.

urological procedures.  (Doc. 4 at 86.)  He received a response on January 14, 2020, explaining that pre-op testing had to be performed again and he would be scheduled. (Doc. 4 at 88.)

On February 24, 2020, Plaintiff had the cystoscopy/vaporization procedures on an outpatient basis.[10]  (Doc. 4 at 15 ¶ 16.)  Following the procedures, the surgeon ordered Percocet every six hours for pain.  When Plaintiff returned to prison, he saw nursing and he was told that no pain medication would be provided until he had been seen by a provider.  (*Id.*)  The next day, February 25, 2020, Plaintiff submitted an HNR complaining of severe post-surgical pain and not being provided pain medication following his procedures.  (Doc. 4 at 98.)  That day, Defendant Olmstead saw Plaintiff and told him that Centurion policy prohibited the use of Percocet in Plaintiff's unit, i.e., the Browning Unit.  Instead, Olmstead ordered codeine for pain, which Plaintiff was to begin receiving the morning of February 25, but Plaintiff did not receive codeine until the evening of February 25, or 36 hours after his surgery.  Plaintiff only received one codeine pill in the 48 hours after his procedures.  (Doc. 4 at 15 ¶ 16.)

### 6.    General Allegations

Since 2011, Plaintiff has been treated for anxiety, post-traumatic stress disorder (PTSD), and depression with medications and therapy.  Plaintiff's mental health conditions have been exacerbated by "Defendants' deliberate indifference" to his serious medical needs.  Plaintiff claims that Defendants Ryan and Shinn contracted with Defendant Centurion despite knowing of rampant deficiencies[11] and failed to take remedial action.  Plaintiff contends that medical records reflect his serious medical conditions, of which Centurion was aware.  He claims that Centurion nevertheless denied him PT-recommended items, unduly delayed scheduling his urological procedures,

---

[10]  For the more than four months he waited to have the urological procedures, Plaintiff suffered difficulty urinating.

[11]  Ryan contracted with Centurion on behalf of ADC, which took effect on July 1, 2019.  Shinn succeeded Ryan in October 2019 and after the contract had been executed and took effect.

denied him access to his TENS for six weeks, and denied or delayed tramadol and other pain medications, all of which resulted in severe pain to Plaintiff.[12]

Plaintiff claims that Defendant Days refused to allow the PT-recommended items despite her knowledge of Plaintiff's wheelchair status and ADA classification and that Days placed him in a non-ADA cell without handicap bars necessary for Plaintiff to safely transfer between his bunk, toilet, and wheelchair.  As a result, Plaintiff allegedly suffered falls, injuries, decreased mobility, and pain.

Plaintiff contends that Defendant Olmstead failed to "accept medical indication for PT devices" without examining him and denied his request for such devices.  (*Id.* at 9.) Despite knowledge that Plaintiff needed immediate medication for post-surgical pain, Olmstead failed to ensure that Plaintiff promptly received such medication.

Plaintiff contends that Ryan and Shinn acted with deliberate indifference to his known medical conditions by contracting with Centurion and failing to remedy its deficiencies.

### B.    Count II

Plaintiff alleges the following:

On May 23, 2019, Plaintiff met with Defendant Days and informed Days about the recommendations of his neurosurgeon and physical therapist that he be provided the PT-recommended items.  Days denied Plaintiff's request to have those items and expressed dismay over Plaintiff's complaints about the denial of those items, his grievances and previous litigation, and his attempts to approach medical and security staff about these matters.  Days told Plaintiff that if he persisted, disciplinary and other actions would result.

On June 26, 2019, Plaintiff met with Days again about his grievance concerning denial of the PT-recommended items and his resulting pain.  Days issued Plaintiff a

---

[12]   None of Plaintiff's allegations support that medical staff acted pursuant to a policy or custom of Centurion.  Further, Plaintiff alleges that Arnold, an ADC employee, confiscated the TENS, and that unidentified staff would not allow him to use the TENS in the Health Unit.  He does not allege facts to support that medical staff acted pursuant to a policy or custom of Centurion.

disciplinary charge, which Plaintiff contends was false.   Days claimed to have "intelligence" that Plaintiff posed a danger to institutional security[13]; Plaintiff contends Days fabricated that claim.   The next day, the grievance coordinator dismissed the charge, but Plaintiff claims that Days' fabricated "intelligence" was used to adversely affect him.   A few weeks after the disciplinary was dismissed, Days followed through on a threat to move Plaintiff into a cell without handicap bars.

Many of Centurion's employees at ADC facilities had previously worked for Corizon, which provided health care to ADC prisoners prior to July 1, 2019.   Plaintiff submitted complaints in 2019 to 2020 about not receiving prompt and adequate medical care.   By February 2020, nurses and officers told Plaintiff that his continued complaints would result in problems with his pain medication.   The provision of Plaintiff's pain medication was increasingly delayed in February and March.   Plaintiff contends that Centurion intentionally delayed the administration of his pain medication as retaliation for his complaints and grievances.   (*Id.* at 11.)   He contends that Arnold harmed him by not returning his TENS as retaliation for Plaintiff's grievances.

## IV.   Failure to State a Claim under 42 U.S.C. § 1983

To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage.   *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)).   In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant.   *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

. . . .

---

[13]   Plaintiff states that based on the context, he believes that two prisoners with whom he has had trouble for years, and a habeas corpus attorney against whom Plaintiff filed an ineffective assistance of counsel claim in April 2019, were the likely sources. (Doc. 4 at 17, ex. 1 ¶ 21.)

### A.    Centurion

Plaintiff sues Centurion, a private corporation.  To state a claim under § 1983 against a private entity performing a traditional public function, such as providing medical care for prisoners, a plaintiff must allege facts to support that his constitutional rights were violated as a result of a policy, decision, or custom promulgated or endorsed by the private entity.  *See Tsao v. Desert Palace, Inc*., 698 F.3d 1128, 1138-39 (9th Cir. 2012); *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997).  A plaintiff must allege the specific policy or custom and how it violated his constitutional rights.  A private entity is not liable merely because it employs persons who allegedly violated a plaintiff's constitutional rights.  *See Tsao*, 698 F.3d at 1138-39; *Buckner*, 116 F.3d at 452.

Plaintiff has not alleged that any of the conduct described in the Complaint was the result of a specific policy or custom of Defendant Centurion, or what any such policy or custom was.  Therefore, Plaintiff fails to state a claim under § 1983 against Centurion and it will be dismissed.

### B.    Shinn and Ryan

To state a claim against a defendant, "[a] plaintiff must allege facts, not simply conclusions [to] show that an individual was personally involved in the deprivation of his civil rights."  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  For an individual to be liable in his official capacity, a plaintiff must allege injuries resulting from a policy, practice, or custom of the agency over which that individual has final policy-making authority.  *See Cortez v. County of Los Angeles*, 294 F.3d 1186, 1188 (9th Cir. 2002).  In addition, there is no respondeat superior liability under § 1983, so a defendant's position as the supervisor of someone who allegedly violated a plaintiff's constitutional rights, absent more, does not make him liable.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  A supervisor in his personal capacity "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."  *Taylor*, 880 F.2d at 1045.  Further, under

Ninth Circuit law, a defendant can be liable for failure to act.  *Id.*

Plaintiff alleges that Shinn and Ryan contracted with Centurion despite knowing of its deficiencies, which have resulting in the violation of Plaintiff's right to constitutionally adequate medical care.  As noted above, the contract with Centurion was executed before Shinn became the ADC director.  Therefore, Plaintiff fails to state a claim against Shinn on this basis.  With respect to Ryan, Plaintiff fails to allege facts to support that Ryan knew of rampant deficiencies of Centurion when he contracted with it such that contracting with Centurion rose to the level of deliberate indifference.

Plaintiff also alleges that Ryan and Shinn failed to remedy alleged deficiencies in the provision of medical care by Centurion, however, Plaintiff fails to allege specific facts to support this allegation.  For the reasons discussed, Plaintiff's § 1983 claims against Ryan and Shinn, in their individual and official capacities, will be dismissed.

**C.    Medical Care**

Plaintiff alleges that Olmstead determined that the PT-recommended items were not medically necessary and failed to ensure that Plaintiff promptly received pain medication following Plaintiff's urological procedures.

Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth Amendment.  To state a § 1983 medical claim, a plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"Deliberate indifference is a high legal standard."  *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Deliberate indifference in the medical context may be shown by a

1   purposeful act or failure to respond to a prisoner's pain or possible medical need and
2   harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may
3   also be shown when a prison official intentionally denies, delays, or interferes with
4   medical treatment or by the way prison doctors respond to the prisoner's medical needs.
5   *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Jett*, 439 F.3d at 1096.

6   　　　Deliberate indifference is a higher standard than negligence or lack of ordinary
7   due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor
8   gross negligence will constitute deliberate indifference." *Clement v. California Dep't of
9   Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*,
10  622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or
11  "medical malpractice" do not support a claim under § 1983). "A difference of opinion
12  does not amount to deliberate indifference to [a plaintiff's] serious medical needs."
13  *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care,
14  without more, is insufficient to state a claim against prison officials for deliberate
15  indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407
16  (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of
17  "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

18  　　　To the extent that Plaintiff seeks relief for allegedly deliberate indifference to a
19  serious medical need with respect to the PT-recommended items, Plaintiff alleges a
20  difference of medical opinion, which is insufficient to state a medical claim, particularly
21  when Olmstead's denial occurred months after Days had denied Plaintiff leave to obtain
22  the items. Plaintiff also alleges that Olmstead failed to ensure that he promptly received
23  post-procedure pain medication, upon his return to prison. Plaintiff does not allege
24  Olmstead was responsible for making such arrangements or facts to support that
25  Olmstead acted with deliberate indifference to Plaintiff's post-procedure pain. Plaintiff
26  indicates that he saw Olmstead the morning after the procedures and that Olmstead
27  ordered him pain medication, which he was to receive that morning. Absent more,
28  Plaintiff fails to state a claim against Olmstead for deliberate indifference to his serious

1   medical needs.

2   **V.    Failure to State a Claim Under the ADA**

3          Title II of the Americans with Disabilities Act (ADA) provides that "no qualified

4   individual with a disability shall, by reason of such disability, be excluded from

5   participation in or be denied the benefits of the services, programs, or activities of a

6   public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

7   Section 504 of the Rehabilitation Act (RA), 29 U.S.C. § 794, "is materially identical to

8   and the model for the ADA, except that it is limited to programs that receive federal

9   financial assistance . . ."  *Armstrong v. Davis*, 275 F.3d 849, 862 n.17 (9th Cir. 2001)

10  (internal quotations omitted) *abrogated on other grounds by Johnson v. California*, 543

11  U.S. 499 (2005).

12         Title II of the ADA "authorizes suits by private citizens for money damages

13  against public entities that violate § 12132," *United States v. Georgia*, 546 U.S. 151, 153

14  (2006), and state prisons "fall squarely within the statutory definition of 'public entity.'"

15  *Penn. Dept. of Corrs. v. Yeskey*, 524 U.S. 206, 210 (1998); *see also Phiffer v. Columbia

16  River Corr. Inst.,* 384 F.3d 791, 792-93 (9th Cir. 2004).  The "alleged deliberate refusal

17  of prison officials to accommodate [a prisoner's] disability-related needs in such

18  fundamentals as mobility, hygiene, medical care, and virtually all other prison programs

19  [can] constitute[] 'exclu[sion] from participation in or . . . [denial of] the benefits of' the

20  prison's 'services, programs, or activities.'"  *Georgia*, 546 U.S. at 157.

21         To state a claim under the ADA or RA, a plaintiff must allege that: "(1) he is an

22  individual with a disability; (2) he is otherwise qualified to participate in or receive the

23  benefit of some public entity's services, programs, or activities; (3) he was either

24  excluded from participation in or denied the benefits of the public entity's services,

25  programs, or activities, or was otherwise discriminated against by the public entity; and

26  (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability."

27  *McGary v. City of Portland,* 386 F.3d 1259, 1265 (9th Cir. 2004) (alteration in original)

28  (quoting *Thompson v. Davis,* 295 F.3d 890, 895 (9th Cir. 2002)) (internal quotation

marks omitted).   Furthermore, "[t]o recover monetary damages under Title II of the ADA, a plaintiff must prove intentional discrimination on the part of the defendant." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001).   To show discriminatory intent, a plaintiff must establish deliberate indifference by the public entity, which requires: (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood.  *Id*. at 1138-39; *see also T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist*., 806 F.3d 451, 467 (9th Cir. 2015) (a plaintiff seeking monetary damages under the ADA or RA "must show that the defendant acted with intent to deny him the benefits of the public program or a reasonable accommodation").

## A.     Individual Defendants in their Individual Capacities

Plaintiff sues individual employees of ADC and Centurion.  Neither the ADA nor the RA provide a basis to sue officers or officials in their individual capacities.  *See Walsh v. Nev. Dep't of Human Resources*, 471 F.3d 1033, 1037 (9th Cir. 2006) ("individual defendants cannot be held personally liable for violations of the ADA"); *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) (plaintiff cannot sue state officials in their individual capacities to vindicate rights created by the ADA or the RA). The Court will therefore dismiss Plaintiff's ADA allegations against the individual Defendants in their individual capacities.

## B.     Centurion

Plaintiff also fails to state an ADA/RA claim against Centurion.  Centurion is a private corporation and not a public entity against which the ADA/RA applies.  *See Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010); *Phillips v. Tiona*, 508 Fed. App'x 737, 748 (10th Cir. 2013); *Medina v. Valdez*, No. 1:08cv00456, 2011 WL 887553, at *4 (D. Ida. Mar. 10, 2011); *Wilkins-Jones v. County of Alameda*, 859 F.Supp.2d 1039, 1047 (N.D. Cal. 2012).   Accordingly, Plaintiff's ADA/RA claim will be dismissed against Centurion.

. . . .

**VI.     Claims for Which an Answer Will Be Required**

Liberally construed, Plaintiff states a claim for retaliation against Days based upon her denial of the PT-recommended items and transfer of Plaintiff to a non-ADA cell. Plaintiff also sufficiently states a claim against Days for a threat to safety based upon her denial of PT-recommended items and based upon Days' transfer of Plaintiff to a non-ADA cell and shower.  In addition, Plaintiff sufficiently states a claim against Arnold for threat to safety by confiscating his TENS.

To the extent that Plaintiff asserts ADA/RA violations against Defendant Shinn, in his official capacity, Plaintiff also states a claim with respect to being assigned to non-ADA cells, showers, and recreation.  Shinn in his official capacity must respond to these allegations.

**VII.    Plaintiff's Motion for Injunctive Relief**

As noted above, Plaintiff has filed a motion for a temporary restraining order and for a preliminary injunction.  A temporary restraining order (TRO) may issue without notice to the adverse party if: "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant *before* the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b) (emphasis added).

Plaintiff has not certified that he has given notice to Defendants that he seeks a TRO or shown why notice should not be required.  Accordingly, the Court will deny Plaintiff's motion to the extent that he seeks a TRO.

Plaintiff also seeks a preliminary injunction.  A preliminary injunction is "'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam); *see also Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008) ([a] preliminary injunction is an extraordinary remedy never awarded as of right.").  A "court

1   may only issue a preliminary injunction on notice to the adverse party." Fed. R. Civ. P.

2   65(a)(1).

3      A plaintiff seeking a preliminary injunction must show that (1) he is likely to

4   succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3)

5   the balance of equities tips in his favor, and (4) an injunction is in the public interest.[14]

6   *Winter*, 555 U.S. at 20.  Where a movant seeks a mandatory injunction, rather than a

7   prohibitory injunction, injunctive relief is "subject to a higher standard" and is

8   "permissible when 'extreme or very serious damage will result' that is not 'capable of

9   compensation in damages,' and the merits of the case are not 'doubtful.'"  *Hernandez v.*

10  *Sessions,* 872 F.3d 976, 999 (9th Cir. 2017) (quoting *Marlyn Nutraceuticals, Inc. v.*

11  *Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009)).[15]  "A mandatory

12  injunction orders a responsible party to take action," while "a prohibitory injunction

13  prohibits a party from taking action and preserves the status quo pending a determination

14  of the action on the merits."  *Marlyn Nutraceuticals*, 571 F.3d at 879 (internal quotation

15  marks omitted).  "The 'status quo' refers to the legally relevant relationship between the

16  parties before the controversy arose."  *Arizona Dream Act Coalition v. Brewer*, 757 F.3d

17  1053, 1060-61 (9th Cir. 2014).

18     Plaintiff seeks a preliminary injunction requiring Defendants (1) to allow him to

19  purchase and possess a wheelchair table, a typewriter, a heating pad, and elastic bands,

20  i.e., the PT-recommended items; (2) to provide parallel bars in the 50 x 90 foot recreation

---

22  [14] "But if a plaintiff can only show that there are 'serious questions going to the
23  merits'—a lesser showing than likelihood of success on the merits—then a preliminary
    injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,'
    and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*,
24  709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*,
    632 F.3d 1127, 1135 (9th Cir. 2011)).  Under the serious question variant of the *Winter*
25  test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may
    offset a weaker showing of another."  *Lopez*, 680 F.3d at 1072.  Regardless of which
26  standard applies, the movant "has the burden of proof on each element of the test."  *See*
    *Envtl. Council of Sacramento v. Slater,* 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).
27     [15] "The 'status quo' refers to the legally relevant relationship between the parties
28  before the controversy arose." *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053,
    1060-61 (9th Cir. 2014).

TERMPSREF

period during all of his recreation periods[16]; (3) to install handicap bars in Plaintiff's cell and other areas used by Plaintiff, including visitation rooms, holding rooms, toilets, and showers; (4) to grant Plaintiff "Keep on Person" (KOP) status for his pain management medications or to provide such medications at 8-hour intervals; (5) to require the Unit medical clinic to maintain a stock of tramadol to prevent a lapse in medication for Plaintiff; (6) to prescribe medications recommended by "any" outside doctor; and (7) to refrain from retaliatory acts.  Except as to (7), Plaintiff seeks a mandatory injunction.[17]

Plaintiff indicates in his brief that item (2) is moot and that he has access to parallel bars.  Therefore, his motion will be denied as to that item.  Plaintiff fails to allege facts in his motion or his complaint to support a likelihood of retaliatory acts against him and, in any event, the relief sought in Item (7) is vague and conclusory.  Relief as to it will also be denied.

Although Plaintiff complains of several missed or delayed delivery of pain medications, he does not identify the individuals who allegedly failed to timely provide his medication, alleged facts to support that such medications were denied or delayed pursuant to a policy, practice or custom of Centurion, or demonstrated a likelihood of success as to this issue.  Accordingly, the Court will deny Item (4).  Item (6) will also be denied.  Plaintiff does not have a constitutional right to receive medications ordered by outside health care providers, rather than alternative medications prescribed by Centurion providers.  The Court will also deny relief as to Item (5) absent specifica allegations to support that lapses in receiving particular medications were intentional.

The Court will require Defendant Days and Shinn to address injunctive relief as to Items (1) and (3).

. . . .

---

[16]  As noted in n.5, *supra*, Plaintiff states in his brief that he has parallel bars at recreation.  Accordingly, injunctive relief as to this item will be denied as moot.

[17]  Defendants are already constitutionally barred from retaliatory conduct and, absent facts to support ongoing or imminent retaliatory conduct, Plaintiff's motion will be denied as to (7).

## VII.    Warnings

### A.    Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

### B.    Copies

Because Plaintiff is currently confined in an Arizona Department of Corrections unit subject to General Order 14-17, Plaintiff is not required to serve Defendants with a copy of every document he files or to submit an additional copy of every filing for use by the Court, as would ordinarily be required by Federal Rule of Civil Procedure 5 and Local Rule of Civil Procedure 5.4.

**If** Plaintiff is transferred to a unit other than one subject to General Order 14-17, he will be required to: (a) serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files, and include a certificate stating that a copy of the filing was served; and (b) submit an additional copy of every filing for use by the Court. *See* Fed. R. Civ. P. 5(a) and (d); LRCiv 5.4.  Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### C.    Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)    Defendant Centurion; Defendant Ryan, in his individual and official capacities; Defendant Olmstead, in her individual and official capacities; and Defendant Shinn, in his *individual* capacity only, are **dismissed** without prejudice.

(2)    Defendant Shinn in his official capacity, and Defendants Days and Arnold,

in their individual capacities, must answer Counts I and II as set forth herein.

(3)     The Clerk of Court must send Plaintiff a service packet including the Complaint (Doc. 1), this Order, and both summons and request for waiver forms for Defendants Shinn, Days, and Arnold.

(4)     Plaintiff must complete[18] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(5)     If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(6)     The United States Marshal must retain the Summons, a copy of the Complaint, a copy of the motion for injunctive relief and brief (Docs. 3 & 4), and a copy of this Order for future use.

(7)     The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order.

(8)     A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(9)     The Marshal must immediately file signed waivers of service of the

---

[18] If a Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

summons.  If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

       (a)     personally serve copies of the Summons, Complaint, the motion for injunctive relief and brief (Docs. 3 & 4), and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

       (b)     within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant.  The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, the motion for injunctive relief and brief (Docs. 3 & 4), or this Order and for preparing new process receipt and return forms (USM-285), if required.  Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(10)    Defendants must answer the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(11)    Any answer or response must state the specific Defendant by name on whose behalf it is filed.  The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(12)    Plaintiff's motion for a TRO or a preliminary injunction (Doc. 3) is **denied** to the extent that he seeks a TRO.

(13)    Defendants Days and Shinn must respond to Plaintiff's motion for a preliminary injunction (Doc. 3), as to Items (1) and (3) described above, no later than **30 days** following the return of a waiver of service or service of the Complaint and summons on them.  Plaintiff must file any reply no later than 15 days after the filing of

Defendants' response to the motion.

(14)    This matter is referred to Magistrate Judge John Z. Boyle pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 28th day of April, 2020.

James A. Teilborg
Senior United States District Judge