WO                                                                                               SC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Frank Jarvis Atwood, | No. CV 20-00623-PHX-JAT (JZB) |
| Plaintiff, | |
| v. | **ORDER** |
| Panaan Days, et al., | |
| Defendants. | |

**I.      Background**

Plaintiff Frank Jarvis Atwood, who is confined in the Arizona State Prison Complex-Eyman, filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983, a motion for injunctive relief (Doc. 3), and a brief (Doc. 4), and paid the filing and administrative fees (Doc. 9). In an April 29, 2020 Order, the Court ordered Defendants Days, Arnold, and Shinn to answer the Complaint (Doc. 10). In the same Order, the Court ordered Defendant Days and Shinn to respond to a portion of Plaintiff's motion for a preliminary injunction. The Court subsequently granted Plaintiff's motion for reconsideration and ordered Defendants Days and Shinn to address Plaintiff's request to use parallel bars in their response to Plaintiff's motion for a preliminary injunction (Doc. 25).

On July 10, 2020, Defendants Arnold, Days, and Shinn filed their Answer to the Complaint (Doc. 20). On July 21, 2020, Plaintiff filed "Plaintiff's Notice of Filing an Amended Complaint (as Matter of Course) and Motion to Supplement the Complaint"

(Doc. 22) and lodged a proposed First Amended Complaint (Doc. 23).  On July 24, 2020, Defendants filed a response to Plaintiff's motion for injunctive relief (Doc. 26).  On July 29, 2020, Plaintiff filed a "Supplement" to his motion for injunctive relief (Doc. 27) and an "Amended Brief" in support of his motion for injunctive relief (Doc. 28).  Plaintiff subsequently filed his reply (Doc. 30) to Defendants' Response to his motion for injunctive relief (Doc. 30).

In a September 9, 2020 Order (Doc. 37), the Court ordered Plaintiff's First Amended Complaint filed and denied Plaintiff's motion to supplement his Complaint as moot.  The Court ordered Defendants Centurion, Olmstead, Lopez, Days, Arnold, Shinn, and Scott to answer Counts I and IV of the First Amended Complaint; Centurion, Olmstead, Lopez, and Scott had not previously been ordered served.  The Court denied Plaintiff's motion for injunctive relief in part but ordered Defendants Shinn and Days to file a sur-reply as to two discrete issues.  Finally, the Court referred pretrial proceedings to Magistrate Judge Boyle as authorized by 28 U.S.C. § 636(b)(1).

On September 16, 2020, Plaintiff filed a motion to reconsider the dismissal of Count III (Doc. 39).

On September 24, 2020:

- Defendants Shinn, Days, and Arnold filed an Answer to the First Amended Complaint (Doc. 41).
- Plaintiff filed a motion to supplement the First Amended Complaint (Doc. 43) and lodged a proposed Rule 15(d) Supplemental Complaint (Doc. 44).
- Plaintiff filed a second motion for a temporary restraining order (Doc. 45) and a brief (Doc. 46) seeking injunctive relief for the alleged denial of pain treatment against Olmstead and Centurion contained in Plaintiff's lodged Supplemental Complaint, Doc. 52.
- Magistrate Judge Boyle granted Defendants Shinn and Days until October 2, 2020 to file a sur-reply to Plaintiff's first motion for injunctive relief, Doc. 3, and to Plaintiff's supplement to his motion for a temporary

restraining order and preliminary injunction, Doc. 27, and amended brief, Doc. 28. (Doc. 42.)

In a September 25, 2020 Order (Doc. 47), this Court ordered Defendants Centurion and Olmstead to respond to the second motion for injunctive relief, Doc. 45, no later than the date their response was due to Plaintiff's motion to file a Supplemental Complaint, i.e., October 2, 2020, but at that juncture, neither Centurion nor Olmstead had been served and neither received that Order.

On October 2, 2020, Defendants Centurion and Olmstead waived service of the First Amended Complaint (Docs. 48 and 49), and to date, neither has responded to Plaintiff's second motion for injunctive relief, Doc. 45. The Court will order Defendants Centurion and Olmstead to respond to Plaintiff's second motion for injunctive relief[1] within fifteen days from the filing date of this Order and Plaintiff may thereafter file a reply to their response within seven days.

On October 13, 2020, Magistrate Judge Boyle granted Plaintiff's motion to file his Supplemental Complaint, Doc. 51, which was filed, Doc. 52. As noted above, the Supplemental Complaint concerns medical care provided by Defendants Olmstead and Centurion. The Court will require Defendants Centurion and Olmstead to respond to the Supplemental Complaint within 30 days from the filing date of this Order.

On October 14, 2020, Plaintiff filed a document, Doc. 53, captioned as "Plaintiff's Motion for Attention to Document 27 ([Motion to] Supplement [] Preliminary Injunction [Motion]) and Document 28 (Amended Brief in Support thereto) re Religious Practice [Motion for Injunctive Relief]." Plaintiff has also filed a motion for ruling on his second motion for injunctive relief and his motion to file a supplemental complaint (Doc. 54).[2] Finally, Plaintiff filed a sur-reply to Defendants' sur-reply (Doc. 55).

---

[1] The remaining portion of Plaintiff's first motion for injunctive relief does not require a response from Centurion or Olmstead.

[2] Because Defendants Centurion and Olmstead only recently waived service of the First Amended Complaint, and had not been served with the previous order, the Court will order them to respond to Plaintiff's second motion for injunctive relief, Doc. 45. Accordingly, Plaintiff's motion for ruling will be denied as premature.

The Court will grant the Motion for Attention (Doc. 53) to the extent this Order contains a ruling on the balance of Plaintiff's first motion for injunctive relief. The Court will deny Plaintiff's October 14, 2020 motion (Doc. 54) for ruling on his second motion for injunctive relief as premature prior to a response from Defendants Centurion and Olmstead, and will deny the motion as moot to the extent Plaintiff seeks a ruling on his motion to file a supplemental complaint. Below, the Court addresses the remaining portion of Plaintiff's first motion for injunctive relief (Doc. 3) regarding the lack of grab bars in visitation areas, holding cells, and availability of accessible toilet facilities when Plaintiff is in the visitation area, health unit, or holding cells. The Court also addresses Plaintiff's motion for reconsideration of the dismissal of Count III of the First Amended Complaint, Doc. 39.

**II.     Remainder of Plaintiff's First Motion for Injunctive Relief**

In his first motion for injunctive relief, Plaintiff sought a preliminary injunction requiring in part that Defendants install handicap bars in Plaintiff's cell and other areas used by him, including visitation rooms, holding rooms, toilets, and showers. (Doc. 3 ¶ 3.) Plaintiff also sought an injunction requiring grab bars in every area to which had access, including the visitation area, holding cells, and showers and toilets. The Court denied the motion as moot as to grab bars in Plaintiff's current cell and shower but ordered Defendants Shinn and Days to file a sur-reply concerning two discrete issues: grab bars in areas other than Plaintiff's cell and shower used by him--specifically visitation and holding cells and associated toilets. (Doc. 37.)

In ordering a sur-reply, the Court noted that in their response, Defendants Days and Shinn argued that Plaintiff had failed to allege or show that grab bars were needed in the visitation area used by him, which they described as large enough to accommodate maneuvering his wheelchair and containing tables that Plaintiff could use to balance himself if he wanted to stand. The Court also noted that Defendants argued that holding cells were intended for temporary confinement such that the need for grab bars was unnecessary and that the presence of grab bars in holding cells would pose a safety and

1  security threat, "as inmates could dislodge the bars and use them as weapons," without
2  showing any likelihood that a prisoner in a holding cell would have the time and means to
3  do so.  (Doc. 26 at 8.)

4　　　　　The Court further noted that in his reply, Plaintiff stated that he was only allowed
5  non-contact visitation and that the visitation area used by him was not the area described
6  by Defendants and was much smaller.  Plaintiff stated that while the non-contact
7  visitation area was accessible to wheelchairs, staff would not escort him to a toilet
8  between 8:00 and 10:00 a.m. and 11:00 a.m. and 1:00 p.m. during weekly visits.  As a
9  result, he claimed that he was forced to attempt to use a catheter/urinal without access to
10 a grab bar, which had caused him to fall, and he sought installation of a handicap bar in
11 the visitation area used by him and in associated toilets.  With respect to grab bars in
12 holding areas, Plaintiff noted that Defendants had submitted no evidence to support that
13 prisoners had been able to dislodge grab bars in holding cells and he noted that two
14 Intake holding cells, which were used to search numerous prisoners daily, had grab bars.

15　　　　　The Court noted that Defendants had not submitted evidence to support that
16 holding cells were only used for brief periods such that access to a toilet with grab bars
17 was unnecessary for ADA-prisoners.  The Court ordered Defendants to file a sur-reply
18 concerning the lack of grab bars in toilet facilities in the visitation area used by Plaintiff
19 and ordered Defendants to file a sur-reply concerning the lack of grab bars in holding
20 cells in which Plaintiff, an ADA-prisoner, was placed. (Doc. 37.)

21　　　　　In their sur-reply, Defendants address the visitation area used by Plaintiff, Intake
22 holding cells, Health Unit holding cells, and out-of-cell areas.

23　　　　**A.　　Visitation Area and Health Unit Holding Cells**

24　　　　　Defendants have agreed to install a grab bar in one of the South Visitation rooms
25 used by Plaintiff[3] and into the largest of the Browning Health Unit's holding enclosures.[4]

---

27　　　[3] Defendants state that legal visitation rooms are typically used for in-person
28 attorney visits, with two legal visitation rooms in each of the North Visitation area and
the South Visitation area of Browning, including a "'right' attorney visitation room,"
citing Doc. 30 at 4.  (Doc. 50 at 1.)  Prisoners and their attorneys use these rooms for

Defendants ask the Court for deference concerning the exact location where the grab bars will be installed. Plaintiff indicates his acquiescence to Defendants' agreement to install grab bars in these two areas. His motion for injunctive relief is therefore moot as to these areas. The Court will deny the motion with leave to file a new motion for injunctive relief if Defendants fail to install grab bars as set forth in their sur-reply. The Court will defer to Defendants' determination about the exact location of the grab bars, which to be effective, must be properly installed.

### B.     Intake Holding Cells

With respect to Intake holding cells, Defendants state that two of the five Intake holding cells are already equipped with grab bars, which Plaintiff has acknowledged. Defendants state that the nearest bathroom to the Intake holding cells is twenty feet away, and Plaintiff does not dispute that is adequate. Accordingly, the Court will deny the motion as to the provision of grab bars in the Intake holding cells.

### C.     Housing Location

Defendants state that the closest accessible bathroom to Plaintiff's "housing

---

visitations lasting from one to four hours. Defendants note that Plaintiff stated that he was using the "south right" visitation room for his non-legal visitation, citing Doc. 30 at 3. Defendants further explain that there are two bathrooms outside this visitation area, but neither can accommodate a wheelchair due to their small size and they cannot be modified because they were built into a fixed structure. (Doc. 50 at 2.) Defendants stated that for that reason, a wheelchair-bound prisoner must be escorted back to his assigned housing unit to use the bathroom there and then returned to continue his visitation. Defendants deny that officers will not escort Plaintiff to his housing unit to use the bathroom between 8:00 and 10:00 a.m. or 11:00 a.m. and 1:00 p.m. Defendants state that movement throughout the prison is not allowed during formal counts at 0400, 1100, and 1600, but such counts typically take 30 minutes, not two hours. (Doc. 50 at 2.)

[4] In the Browning Health Unit, there is an inside climate-controlled enclosure where prisoners wait to be seen by medical staff. The enclosure allows mental health staff to interview or assess a prisoner outside of the prisoner's assigned cell in a confidential setting. A prisoner may spend up to an hour in this enclosure, andDefendants state that the nearest accessible bathroom for wheelchair-bound prisoners in the largest Health Unit holding enclosure is the prisoner's assigned location. Plaintiff states that the bathroom accessible to prisoners in an Intake holding cell is both closer and more convenient for wheelchair-bound prisoners waiting in the Health Unit enclosure.

1   location" is in the housing cluster just outside the prisoner housing pod, where a "wet
2   cell," a cell with running water, is located. (Doc. 50 at 3.) Plaintiff states that the
3   bathroom for wheelchair-bound prisoners near the Intake holding cells is both closer and
4   more convenient for wheelchair-bound prisoners who are in the Health Unit enclosure or
5   in visitation and that the wet cell referred to by Defendants is analogous to the bathroom
6   nearest the visitation area. The Court defers to Defendants concerning the accessible
7   bathroom to which Plaintiff is taken during visitation and Health Unit visits.

8   It now appearing there are no further outstanding issues as to grab bars in areas
9   accessible to Plaintiff, the Court will deny the remaining portion of Plaintiff's first
10   motion for injunctive relief.

**III.   Motion for Reconsideration**

Plaintiff seeks reconsideration of the dismissal of Count III of the First Amended Complaint. (Doc. 39.) A motion for reconsideration should be granted only in rare circumstances. *Defenders of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995). A motion for reconsideration is appropriate where the district court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Such motions should not be used for the purpose of asking a court "'to rethink what the court had already thought through – rightly or wrongly.'" *Defenders of Wildlife*, 909 F. Supp. at 1351 (*quoting Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)). A motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Nor may a motion for reconsideration repeat any argument previously made in support of or in opposition to a motion. *Motorola, Inc. v. J.B. Rodgers Mech. Contractors, Inc.*, 215 F.R.D. 581, 586 (D. Ariz. 2003). Mere disagreement with a previous order is an insufficient basis for reconsideration. *See Leong v. Hilton Hotels*

*Corp.*, 689 F. Supp. 1572, 1573 (D. Haw. 1988).

In his motion, Plaintiff asserts that the Court ordered Defendant Days to respond to Count II of his Complaint but dismissed Count III of the First Amended Complaint for failure to state a claim despite Count III of the First Amended Complaint mirroring many of the allegations in Count II of the Complaint. Plaintiff argues that the dismissal of Count III is inconsistent with the Court's prior determination that Count II of the Complaint stated a claim against Days.

The Court has reviewed the Complaint, First Amended Complaint, and the screening orders for each. In Count II of the Complaint, Plaintiff alleged that Days threatened him with adverse consequences if Plaintiff continued to complain about the denial of PT-recommended items. He further alleged that approximately one month later, Days issued him a false disciplinary charge. Plaintiff alleged that Days claimed to have "intelligence" that Plaintiff posed a danger to institutional security, and Plaintiff claimed that Days fabricated that claim. Plaintiff alleged that a few weeks after the disciplinary was dismissed, Days followed through on a threat to move Plaintiff into a cell without handicap bars. Based on these allegations, the Court ordered Days to respond to these allegations.

In Count III of the First Amended Complaint, however, Plaintiff alleged that on June 26, 2019, he met with Days about his grievance concerning denial of the PT-recommended items and his resulting pain. He alleged that Days issued him a false disciplinary charge, which the grievance coordinator dismissed the next day. He again alleged that Days claimed to have "intelligence" that he posed a danger to institutional security, which he claimed Days fabricated. Plaintiff alleged that Days' fabricated "intelligence" was used to adversely affect him and that, a few weeks after the above disciplinary was dismissed, Days followed through on her threat to move Plaintiff into a cell without handicap bars by having him placed in a watch cell in July 19, 2019, without grab bars, for 53 hours. However, in addition to these allegations, Plaintiff further alleged that he was transferred after being found guilty of a disciplinary infraction for a

conspiracy escape charge; the charge was based upon Plaintiff informing his wife and his private investigator about a recent medical transport, including information about the route. (Docs. 37 at 12-13 n.13; Doc. 28-1 at 42-43, 45.) As a result of that disciplinary, Days reclassified Plaintiff to maximum security and, briefly to the watch cell without handicap bars. It is far more reasonable, and plausible, that Days reclassified Plaintiff after he was found guilty of the conspiracy escape charge, rather than as retaliation for Plaintiff's grievances or complaints. In short, while Plaintiff realleged some of the same facts in Count III of the First Amended Complaint as he had in Count II of his Complaint, he also alleged additional facts that reflected that he had been moved after being found guilty of a disciplinary charge resulting in his reclassification, rather than as retaliation. While Plaintiff disagrees with the charge and the guilt finding, his allegations in the First Amended Complaint support that he was transferred as a result of the disciplinary charge and resulting reclassification. Plaintiff has not shown that the Court clearly erred or cited newly discovered evidence or an intervening change in controlling law. *Sch. Dist. No. 1J, Multnomah County*, 5 F.3d at 1263. Accordingly, the motion for reconsideration will be denied.

**IV.     Warnings**

   **A.     Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

   **B.     Copies**

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. *See* LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to

Plaintiff.

**IT IS ORDERED:**

(1) The reference to Magistrate Judge Boyle is **withdrawn** as to Docs. 3, 39, 45, 53, and 54.

(2) The balance of Plaintiff's motion for injunctive relief (Doc. 3) is **denied**.

(3) Plaintiff's motion for reconsideration (Doc. 39) is **denied**.

(4) No later than **15 days** from the filing date of this Order, Defendants Centurion and Olmstead must respond to Plaintiff's second motion for injunctive relief (Doc. 45). No later than **seven days** after Defendants Centurion and Olmstead respond to Plaintiff's second motion for injunctive relief, Doc. 45, Plaintiff must file his reply to that response.

(5) No later than **30 days** from the filing date of this Order, Defendants Centurion and Olmstead must respond to Plaintiff's Supplemental Complaint, Doc. 52.

(6) "Plaintiff's Motion for Attention" (Doc. 53) is **granted** to the extent stated herein and is otherwise **denied**.

(7) Plaintiff's motion for ruling on his second motion for injunctive relief and his motion to file a supplemental complaint (Doc. 54) is **denied** as premature.

Dated this 20th day of October, 2020.

James A. Teilborg
Senior United States District Judge

- 10 -