Natman Schaye
SBN: 007095
Arizona Capital Representation Project
25 South Grande Avenue
Tucson, AZ 85745
(520) 229-8550
Email: natman@azcapitalproject.org

David A. Lane (*pro hac vice* application to be submitted)
Reid Allison (*pro hac vice* application to be submitted)
Killmer, Lane & Newman, LLP
1543 Champa Street
Denver, Colorado 80202
Telephone: 303-571-1000
Email: dlane@kln-law.com
Email: rallison@kln-law.com

*Attorneys for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Frank Jarvis Atwood,<br><br>         Plaintiff,<br><br>v.<br><br>Panaan Days; *et al.*,<br><br>         Defendants. | No.: CV20-00623-PHX-JAT (JZB)<br><br>**PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>**(ORAL ARGUMENT REQUESTED)** |

Pursuant to Federal Rule of Civil Procedure 65, Plaintiff respectfully moves for a temporary restraining order and preliminary injunction ordering Defendants and their

agents to provide Mr. Atwood vitally necessary pain medication, immediate housing to a residency setting where hands-on wheelchair transferring assistance is available at all times, and an immediate evaluation by an orthopedic specialist to determine available surgical options that could treat and improve his condition. Without this order, Mr. Atwood will continue to suffer constant, severe pain as his spinal condition deteriorates and leaves him all but utterly immobile.

## BACKGROUND

Frank Atwood suffers from a degenerative spinal condition. Defendants know this. For over a decade, the severe pain he suffers has been treated, effectively, with Tramadol. Despite that well-established record of effectiveness, Defendants have decided to discontinue Mr. Atwood's prescription, leaving him in constant, needless pain.

Indeed, this Court has previously stressed that "there is no meaningful dispute that [Mr. Atwood] suffers from severe spinal pain, a serious medical condition." [Doc. 87] at 9. Moreover, "there is also no dispute that Plaintiff has tried various other medications to alleviate his pain, all of which were discontinued as ineffective or causing adverse side effects." *Id.*

Mr. Atwood "clearly experiences" "severe pain and discomfort" daily. *Id.* at 10. This severe pain is currently untreated with effective medication. Instead, Defendants have insisted on giving Mr. Atwood lesser medication that they know is not effective in palliating his constant, severe pain. Defendants have the means to meaningfully reduce Mr. Atwood's pain, they know that their current course simply does not do so, and yet they refuse to continue Mr. Atwood's longstanding pain management prescription. This

is "unnecessary and wanton infliction of pain," and it violates Mr. Atwood's Eighth Amendment rights. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).[1]

This Court is Mr. Atwood's only recourse and hope of ever again receiving medical care that can properly manage and lessen his constant severe pain and meaningfully consider orthopedic treatment. Defendants have staked out a position refusing to provide Mr. Atwood with the necessary medication that they are well aware has lessened his pain in the past and have insisted on providing medication that they know is not effective to manage his pain. Without correction from this Court ordering Defendants to meet the baseline constitutional standard, Defendants will continue to refuse Mr. Atwood the medication and treatment that he needs, and he will continue to suffer unnecessary serious pain.

## MEDICAL EXPERT

Board-Certified Orthopedic Surgeon Philip A. Davidson, M.D. has reviewed Mr. Atwood's relevant medical records and has had multiple telephonic evaluations with him. *See* **Ex. 1**, *Davidson Dec.* ¶ 1. In Dr. Davidson's expert opinion, Mr. Atwood's extensive medical records "reflect[] that the patient's medical needs are not being met and his care is being denied." *Id.* ¶ 10.

---

[1] Defendants' ostensible reason for ending Mr. Atwood's Tramadol prescription—that it is contraindicated by Plaintiff's age and other medical conditions—is grotesque. Defendants and their cohort are hellbent on killing Mr. Atwood within the year, as the Attorney General himself has personally expressed in television interviews; however, they insist that he spend that time in constant, severe pain ostensibly because there is some small possibility that the Tramadol he has taken for years will shorten his life expectancy.

"Mr. Atwood has severe cervical spondylosis with severe radicular symptoms to include, of great importance, C5-C6 myelomalacia.  He has apparently overt radicular symptomatology as well as radiating pain, weakness, and motor dysfunction." *Id.* ¶ 37. Because of his condition, Mr. Atwood suffers "marked pain in the mid low-back region" that is a "9 out of 10 increasing to 10 out of 10 with certain activities, such as turning to get out of bed." *Id.* ¶ 16. He also suffers "radiating pain shooting into [his right] leg" which "extends through his buttock and upper leg at a strength of about 7 out of 10." *Id.* Mr. Atwood is confined to a wheelchair, with such weakness in his lower body that he cannot stand; he uses his hands and upper body to transfer from his chair to bed, though doing so "causes him excruciating pain." *Id.* ¶ 17. His efforts to simply sit erect in his wheelchair "subject him to substantial, debilitating pain." *Id.* ¶ 19.

Defendants have known of Mr. Atwood's condition and its accompanying constant, severe pain for over a decade. Between 2011 and September 2020, Mr. Atwood's pain was treated effectively with a prescription for Tramadol. *Id.* ¶ 20. However, in September 2020, Defendants arbitrarily ended this prescription; to this day, Mr. Atwood is only provided medications that Defendants are aware do not treat his back condition nor lessen his pain. *Id.* ¶ 20. This change in medication has left Mr. Atwood to suffer "constant pain," that he can only feebly attempt to lessen by "continually maintain[ing] a seated posture, either slouching in his wheelchair or partially reclining on his back, in bed while attempting to sleep." *Id.* ¶ 23. "Since Fall 2020, he has experienced too much pain to sleep either on his side or his back. Lying flat on his back severely

exacerbates his conditions, causing maximum pain. He is only able to sleep sporadically." *Id.*

In January 2021, Mr. Atwood began suffering an extreme case of diarrhea, which worsened his severe back pain and caused spasms. *Id.* ¶ 25. Around January 18, 2021, a stool sample revealed that Mr. Atwood had been suffering a staph infection for around ten days. *Id* ¶ 26. After this terrible experience, Defendant Olmstead evaluated Mr. Atwood and discussed with him further treatment, including neurosurgical evaluation, as well as pain management options. *Id.* ¶ 27. However, to this point, neither a surgical evaluation nor effective pain medication has been provided. *Id.*

In April, May, and early June of this year, Mr. Atwood underwent multiple surgeries to treat serious kidney stones. *Id.* ¶¶ 28-33. In early May, while housed in the prison infirmary under the care of Dr. Mahn, he was prescribed (again) Tramadol to manage his severe back pain and other discomfort. *Id.* ¶ 30. However, by early June— once Mr. Atwood returned from the prison infirmary to the Browning Unit, under the care of Defendant Olmstead—Defendants again discontinued Mr. Atwood's Tramadol prescription, and Mr. Atwood has experienced "resumption of severe pain (a 9 or 10) and significant decrease in his ability to transfer to and from his wheelchair." *Id.* ¶ 34. Similarly, his ability to sleep is compromised in the same manner that it has been since the previous discontinuation of his Tramadol prescription in Fall 2020. *Id.*

In light of Mr. Atwood's ongoing constant pain and his deteriorating back condition, Dr. Davidson insists that "[a]t this point in time, further treatment and evaluation are medically necessary and appropriate, and urgently needed." *Id.* ¶ 39. In

particular, "Mr. Atwood needs to be seen immediately by an interventional pain specialist to ascertain whether fluoroscopically-guided injections such as epidural steroid injections would potentially provide some symptom relief from his basic, resting positions." *Id.* ¶ 40. Moreover, the Browning Unit personnel's repeated decisions to eliminate Tramadol from Mr. Atwood's prescriptions (after he was given it for years and enjoyed effective pain management) "is expected to return Mr. Atwood's pain to an intolerable level." *Id.* ¶ 41. Therefore, "[a] prescribed moderate dose of Tramadol should be sustained." *Id.*

In addition to urgently needed effective pain management, Mr. Atwood is in serious need of "surgical consultation with an orthopedic spine surgeon or neurosurgeon to ascertain and clarify his surgical options." *Id.* ¶¶ 42-43. Mr. Atwood is "an appropriate surgical candidate" and "surgical intervention is likely necessary to address the underlying causes of his chronic pain." *Id.* ¶ 43. Finally, in Dr. Davidson's "professional opinion … it is imperative and humane that additional, palliative measures also be implemented on this patient's behalf immediately. These include lumbar and cervical orthosis, along with a residency setting where immediate hands-on wheelchair transferring assistance is continually available." *Id.* ¶ 44.

## ARGUMENT

Ordinarily, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Where "the balance of hardships tips sharply in the plaintiff's favor," the plaintiff

need only "demonstrate[] . . . that serious questions going to the merits were raised" to satisfy the merits prong of the analysis and justify an injunction. *Alliance of the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).[2] Mr. Atwood must be granted a temporary restraining order and/or preliminary injunction because his Eighth Amendment rights are being violated, as he is left to suffer constant severe pain while Defendants provide him with "medical care" that they know does not lessen his pain or treat his deteriorating condition.

## I.   Plaintiff Is Likely to Succeed on the Merits of His Eighth Amendment Claim of Deliberate Indifference to His Serious Medical Needs.

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (internal quotation omitted). The Amendment proscribes the "unnecessary and wanton infliction of pain," including deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104.

Courts employ a two-part test in evaluating Eighth Amendment deliberate indifference claims: a plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation omitted). The objective component examines whether

---

[2] "The standard for issuing a TRO is the same as that for issuing a preliminary injunction." *Shakur v. Ryan*, No. CIV 14-2318-TUC-CKJ, 2015 U.S. Dist. LEXIS 114628, at *21 (D. Ariz. Aug. 25, 2015).

the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Mr. Atwood clearly suffers from a serious medical need, as already recognized by this Court. [Doc. 87] at 9 ("[a]s to the merits, there is no meaningful dispute that Plaintiff suffers from severe spinal pain, a serious medical condition."). Without proper treatment and medical pain management, Mr. Atwood's constant, unnecessary and substantial pain satisfies the objective prong of the deliberate indifference analysis. *Jett*, 439 F.3d at 1096; *Colwell*, 763 F.3d at 1066; *see also Cintron v. Dir., Cal. Dep't of Corr.*, No. 1:11-CV-00496-MJS (PC), 2012 U.S. Dist. LEXIS 11064, at *10-11 (E.D. Cal. Jan. 30, 2012) ("Plaintiff's allegations of a traumatic spinal injury, corrective surgery, and continuing severe and constant pain, taken as true for purposes of screening, demonstrate a serious medical need, satisfying the first prong of his deliberate indifference claim.").

"[T]he subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed." *Almy v. Baca*, No. 3:17-cv-00224-MMD-CBC, 2019 U.S. Dist. LEXIS 228505, at *18-20 (D. Nev. Oct. 23, 2019). "This second prong . . . is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*,

439 F.3d at 1096. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). "The state of mind required for deliberate indifference is subjective recklessness; however, 'the standard is less stringent in cases involving a prisoner's medical needs . . . because the State's responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns.'" *Shaka v. Ryan*, No. CV 10-2253-PHX-SMM (BSB), 2015 U.S. Dist. LEXIS 26284, at *19-21 (D. Ariz. Mar. 4, 2015) (quoting *McGuckin*, 974 F.2d at 1060). Whether a defendant had sufficient knowledge of a substantial risk of harm is a question of fact, and a fact finder may conclude that a defendant knew of a substantial risk based on the fact that the risk was obvious. *Farmer v. Brennan*, 511 U.S. 825, 842, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). "[D]eliberate indifference may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need." *Shaka*, No. CV 10-2253-PHX-SMM (BSB), 2015 U.S. Dist. LEXIS 26284, at *19-21.

Mr. Atwood has established a likelihood of success on the subjective prong of the deliberate indifference standard. Defendants have made ongoing purposeful acts to refuse to respond to Mr. Atwood's known pain and medical condition. Defendants know of his constant substantial pain, they know that this pain has been managed with some efficacy for years by a prescription for Tramadol, and they know that the lesser drugs they now provide Mr. Atwood do not alleviate his pain. Additionally, Mr. Atwood experiences incomprehensible pain whenever transferring to his wheelchair, he has suffered falls

without transferring assistance, and he has had to crawl across the floor in Browning Unit when unable to access his wheelchair. *See* **Ex. 1,** ¶¶ 19, 22, 25. These conditions, including a fundamental lack of wheelchair transferring assistance, are an extreme departure from those that have been deemed medically necessary when Mr. Atwood has been housed in the infirmary. *Id.*

Knowing all this, Defendants have refused to provide Mr. Atwood necessary medication, leaving him in constant pain. Defendants' course of treatment is medically unacceptable (per both Dr. Davidson's declaration as well as Defendants' own years of experience providing medical care for Mr. Atwood) and Defendants chose and have maintained this course "in conscious disregard of an excessive risk to the plaintiff's health." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 786 (9th Cir. 2019).

In a similar case, a District Court in this circuit found a likelihood of success on the merits of a deliberate indifference claim, where a plaintiff inmate suffered "a complicated, painful, degenerative orthopedic condition." *McNearney v. Wash. Dep't of Corr.*, No. C11-5930 RBL/KLS, 2012 U.S. Dist. LEXIS 115802, at *33 (W.D. Wash. June 15, 2012). The Defendants were aware of this condition and the medical necessity of further evaluation of surgical options, as in this case. *Id.* at 33-39. However, like Defendants in this case, they merely provided over-the-counter and/or ineffective pain relief medication and refused orthopedic evaluation to determine if further treatment was medically necessary. *Id.* The Court determined that such a course of treatment could be found "medically unacceptable under the circumstances" and Defendants had shown "conscious disregard of an excessive risk to Plaintiff's health." *Id.* at 38.

10

For the same reasons, Mr. Atwood has shown a likelihood of success on the merits. "Just because [defendants] have provided [a prisoner] with *some* treatment consistent with the [] Standards of Care, it does not follow that they have necessarily provided her with *constitutionally adequate* treatment." *Norsworthy v. Beard*, 87 F. Supp. 3d 1164, 1187 (N.D. Cal. 2015) (citing *De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013) (emphasis in original); *Fields v. Smith*, 653 F.3d 550, 556 (7th Cir. 2011); *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989) (a plaintiff alleging deliberate medical indifference "need not prove complete failure to treat").

The Fourth Circuit has explained this concept by analogy to a hypothetical circumstance like Mr. Atwood's actual predicament:

> imagine that prison officials prescribe a painkiller to an inmate who has suffered a serious injury from a fall, but that the inmate's symptoms, despite the medication, persist to the point that he now, by all objective measure, requires evaluation for surgery. Would prison officials then be free to deny him consideration for surgery, immunized from constitutional suit by the fact that they were giving him a painkiller? We think not. Accordingly, although . . . a prisoner does not enjoy a constitutional right to the treatment of his or her choice, the treatment a prison facility does provide must nevertheless be adequate to address the prisoner's serious medical need.

*Norsworthy*, 87 F. Supp. 3d at 1187 (quoting *De'Lonta*, 708 F.3d at 526).

In light of the above, Mr. Atwood is likely to succeed on the merits of his deliberate indifference claim. At the very least, his presentation and medical expert's declaration establish "serious questions going to the merits" of his claim to satisfy the merits prong of the analysis and justify an injunction. *Alliance of the Wild Rockies*, 632 F.3d at 1134-35.

II.    **Plaintiff Is Suffering Ongoing, Irreparable Harm, and the Balance of Equities Favors Ordering Defendants to Provide Medical Care.**

Mr. Atwood is suffering ongoing, irreparable harm. As this Court has already noted—*see* [Doc. 87] at 9-11—Mr. Atwood is suffering daily severe pain. This pain is ongoing and will continue so long as Defendants (1) refuse him the pain medication that they know (based on approximately a decade's experience) is effective in treating his pain and (2) refuse him bed-to-wheelchair transferring assistance. This untreated, unnecessary pain constitutes ongoing, irreparable harm for purposes of the preliminary injunction analysis. *See, e.g., Severson v. Igbinosa*, No. 1:10-cv-02217-AWI-GBC PC, 2011 U.S. Dist. LEXIS 5702, at *14-15 (E.D. Cal. Jan. 19, 2011). And, "[t]he physical pain and suffering that Plaintiff would endure from being deprived of his medication, when balanced with the expense of providing Plaintiff with appropriate medication, [and rehousing to a unit that provides wheelchair transferring assistance] tips the equities in Plaintiff's favor." *Id.*

"When adjudicating a preliminary injunction motion, the Ninth Circuit expects lower courts to protect physical harm to an individual over" other considerations, such as monetary costs to government entities. *Rosado v. Alameida*, 349 F. Supp. 2d 1340, 1348 (S.D. Cal. 2004) (citing *Harris v. Bd. of Supervisors*, 366 F.3d 754, 766 (9th Cir. 2004) ("faced with [] a conflict between financial concerns and preventable human suffering, [the court has] little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor.") and *Rodde v. Bonta*, 357 F.3d 988, 999 (9th Cir. 2003) (affirming preliminary injunction in favor of disabled plaintiffs challenging the county's decision to

close specialty medical facility; balance of hardships tipped in favor of plaintiffs, who would be deprived of necessary treatment and suffer increased pain and medical complications)).

Ultimately, "the deprivation of [Mr. Atwood's] constitutional rights under the Eighth Amendment is itself sufficient to establish irreparable harm." *Norsworthy v. Beard*, 87 F. Supp. 3d 1164, 1193 (N.D. Cal. 2015) (citing *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Nelson v. Nat'l Aeronautics & Space Admin*, 530 F.3d 865, 882 (9th Cir. 2008), *rev'd on other grounds*, 562 U.S. 134, 131 S. Ct. 746, 178 L. Ed. 2d 667 (2011) ("Unlike monetary injuries, constitutional violations cannot be adequately remedied through damages and therefore generally constitute irreparable harm."); *Fyock v. City of Sunnyvale*, 25 F. Supp. 3d 1267, 1282 (N.D. Cal. 2014) ("Irreparable harm is presumed if plaintiffs are likely to succeed on the merits because a deprivation of constitutional rights always constitutes irreparable harm.")).

Mr. Atwood is currently suffering constant, severe pain. Defendants do not appear to dispute this, and this Court has already noted it as fact. *See* [Doc. 87] at 9-11. Mr. Atwood's medical history makes clear that Tramadol is effective in helping to manage the pain he suffers due to his condition, and Defendants know this. *Id.* Even so, Defendants have refused him this necessary medication for approximately nine months. Simply put, it is no hardship whatsoever for Defendants to provide Mr. Atwood the medication they know he needs to lessen his pain and the basic orthopedic treatment that

could specify appropriate surgical intervention. The balance of equities overwhelmingly favors alleviating Mr. Atwood's pain, through means that are known and immediately available to Defendants and which Defendants had for years provided without incident or hardship. *See Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008) (holding that courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.").

## III.    An Injunction Serves the Public Interest.

Finally, a temporary restraining order and injunction ordering medical care for Mr. Atwood is in the public interest. The Ninth Circuit has made clear that "it is always in the public interest to prevent the violation of a party's constitutional rights." *De Jesus Ortega Melendres v. Arpiao*, 695 F.3d 990, 1002 (9th Cir. 2012). Indeed, "perhaps no greater public interest exists than protecting a citizen's rights under the constitution." *Legal Aid Soc'y of Hawaii v. Legal Services Corp.*, 961 F. Supp. 1402, 1409 (D. Haw. 1997). Among the vitally important constitutional rights, "[t]he public has a strong interest in the provision of constitutionally-adequate health care to prisoners." *McNearney v. Wash. Dep't of Corr.*, No. C11-5930 RBL/KLS, 2012 U.S. Dist. LEXIS 115802, at *44 (W.D. Wash. June 15, 2012) (quoting *Flynn v. Doyle*, 630 F. Supp. 2d 987, 993 (E.D. Wis. 2009); *see also Farnam v. Walker*, 593 F. Supp. 2d 1000, 1017 (C.D. Ill. 2009) (holding that public had an interest in the maintenance of prisoner's health during the pendency of the lawsuit); *Duran v. Anaya*, 642 F. Supp. 510, 527 (D.N.M. 1986) ("The public at large is not served by . . . the willful or wanton infliction of pain and suffering on prisoners.").

Simply put, "[t]here is no public interest in forcing [Mr. Atwood] to continue suffering unnecessary pain during the pendency of this litigation. The public interest favors a preliminary injunction requiring that Defendants comply with the Eighth Amendment by providing further evaluation and treatment." *McNearney*, 2012 U.S. Dist. LEXIS 115802, at *44. Because Mr. Atwood satisfies each prong of the preliminary injunction standard, this Court must order Defendants to provide him the basic medical care that Defendants know and have known that he needs to avert constant, severe pain.

## CONCLUSION

The Court should enter a temporary restraining order and preliminary injunction ordering Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them to provide Mr. Atwood (1) the necessary pain medication to treat his constant severe pain, (2) rehousing to a unit that has wheelchair transferring assistance available at all times, and (3) an orthopedic surgeon to evaluate him for possible surgical intervention to treat and improve his spinal condition.

Dated this 22nd day of June 2021.


 /s/ *Natman Schaye*
Natman Schaye

Natman Schaye
David A. Lane
Reid Allison
*Attorneys for Plaintiff*

## <u>Certificate of Service</u>

I hereby certify that on June 22, 2021, I electronically filed the foregoing Motion for Temporary Restraining Order and Preliminary Injunction with the Clerk's Office by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


<u>s/Evan Davis</u>
Paralegal
Arizona Capital Representation Project

Exhibit 1

Pursuant to 28 U.S.C. § 1746 (2).

**DECLARATION OF PHILIP A.  DAVIDSON, M.D**.

I, Philip A. Davidson, MD, declare and state as follows:

1.   I am a Board-Certified Orthopedic Surgeon and a member of Davidson Orthopedics and the Utah Orthopedic Spine & Injury Center in Salt Lake City. I have evaluated Mr. Frank Atwood telephonically and reviewed records related to his current condition, and I offer the observations and conclusions set forth below.

2.   In addition to my work with Davidson Orthopedics and the Utah Orthopedic Spine & Injury Center, I am a member of the staffs of Park City Medical Center, Salt Lake Regional Medical Center, LDS Hospital, and Alta View Hospital, and in 2015, I founded Davidson Orthopedics in Salt Lake City.

3.   I am a graduate of Harvard University, B.A., Magna cum Laude, Biology and Comparative Anatomy in 1983. I earned my Doctor of Medicine degree, with Honors in Research, from Cornell University Medical College in 1987.

4.   In 1992, I completed Orthopedic Residency Training with the Baylor College of Medicine and, in 1993, held a Sports Medicine Fellowship with the Kerlan-Jobe Orthopedic Clinic.

5.   Previously, I served on the affiliated faculty of the University of South Florida and successfully developed a large full service Orthopedic Clinic. I have served on FDA panels to evaluate the safety of Osteoarthritis treatments. I

have taught many courses to surgeons in the field of Cartilage Restoration and Joint Resurfacing and published many scientific articles in the orthopedic literature on topics ranging from non-surgical treatments for Knee Osteoarthritis to Resurfacing Surgery of the Shoulder. I have served in the US Naval Reserve as a LCDR in the Medical Corps.

6.   I am an official consultant of Major League Baseball, and The National Football League, having been jointly appointed by the players and owners of the leagues.

7.   For the past two decades, I have been acknowledged as one of the nation's foremost orthopedists treating articular cartilage disorders. My particular area of clinical and academic interest is in the field of biologic and anatomic joint resurfacing. I have been acknowledged by the orthopedic community as a surgical innovator and clinical researcher, publishing extensively and teaching surgeons both nationally and internationally.

8.   Before relocating my practice to Utah, where I co-founded Heiden-Davidson Orthopedics with Drs. Eric and Karen Heiden in 2008, I practiced in Tampa Bay, Florida for 15 years as a widely recognized Orthopedic Surgeon specializing in sports medicine. Since 2015 I have been practicing in Davidson Orthopedics and serving as Medical Director of the Utah Orthopedic Spine & Injury Center. I am actively licensed to practice medicine in the states of Wyoming, Utah and Washington. I have formerly

been licensed in the states of California and Texas. I am Board Certified by the American Board of Orthopedic Surgery.

9.  Mr. Frank Atwood is a 65-year-old man who has been referred for me to review his medical records as well as to evaluate by telephone.  Mr. Atwood is incarcerated.

10. I have reviewed hundreds of pages of assorted medically related correspondences, grievances, and medical records pertaining to the medical case and care of Mr. Frank Atwood produced to his attorneys from Arizona's corrections department. This series of documents reflects that the patient's medical needs are not being met and his care is being denied. Records appear to cover decades. These include physical therapy notes regarding Mr. Atwood's spine. Many notes pertain to his health issues outside of orthopedics.

11. On March 25, 2021, I conducted a telephonic consultation with Mr. Atwood. I conducted an additional telephonic consultation with Mr. Atwood on June 7, 2021.

12. This patient's chief issues center on neck pain, back pain, radicular symptoms and weakness referrable to cervical and lumbar pathologies. Based upon my interviews with Mr. Atwood, it is this examiner's opinion that he has an uncanny recollection of details and dates which appears to be highly accurate. His insights provide great detail into his past medical history and the series of events pertaining to his health history.

13.  Mr. Atwood takes medications for a duodenal ulcer and hypertension.  His

     past medical history is positive for hepatitis C with stage IV cirrhosis and he

     reports a 3 cm lesion in his liver.  He has had a history of prostate issues

     but denies cancer.  He denies having diabetes.  Previous surgical history

     includes gallbladder resection, cataract surgery, knee surgery, and cervical

     fusion as described above.


HISTORY OF PRESENT ILLNESS:

14.  Mr. Atwood reports foremost about his back and related back pain.  He

     describes the pain as having begun in approximately 1990 and being

     treated over the past 30-plus years with oral medications.  He states that he

     has never had fluoroscopically-guided injections into the lumbar region.  He

     has had no surgery on his lumbar region.

15.  Records reflect Mr. Atwood has recently had several intramuscular

     injections of Toradol (between 15 mg and 30 mg), an anti-inflammatory, on

     various days in January 2021. Further, Mr. Atwood reports receiving a

     corticosteroid intramuscularly in his arm (circa February 2021) that he states

     provided some relief of back pain for a couple of weeks.  This injection was

     performed about 2-3 weeks prior to my first phone consultation with him. At

     that time, the benefits were wearing off.

16.  Mr. Atwood states that he has marked pain in the mid low-back region which

     is dull and nonspecific in nature.  He states that the pain is a 9 out of 10

increasing to 10 out of 10 with certain activities, such as turning to get out of bed.  In addition to the localized back pain, which is his worst complaint, he also feels radiating pain shooting into the leg, right side more than left.  He states that the radiating pain extends through his buttock and upper leg at a strength of about 7 out of 10.  In the right leg, he states the pain is a big problem but he is also bothered by marked weakness.  He experiences a sensation of numbness in his foot and marked swelling in the foot.  He feels and reports that the swelling is so great in his feet that he has difficulty wearing shoes.

17. Mr. Atwood reports weakness in his lower extremities to the extent that his legs will not support him to stand.  He describes that he last walked in May 2017.  Now, he describes principally using his hands and upper extremities to transfer from bed to wheelchair, but the transferring causes him excruciating pain.  He was issued in the remote past a series of exercises and stretching, but these are now too painful for him to perform.  He experiences numbness and swelling in the left lower extremity down to his foot.  His weakness is approximately equal, right and left.

18. Mr. Atwood reports a long history of neck pain and cervical radiculopathies beginning in about 2003.  He was subsequently evaluated and treated, having a cervical fusion at C5-C6 in December 2018 that provided him with some decreased weakness and limited pain relief.  His neck pain and the dysfunction in his upper extremities is progressively worsening over the past

several years since the surgery.  He describes numbness in both of his

hands and has difficulty performing simple activities such as just holding a

pen, stating that he drops things and has distinct difficulty with numbness

more so than weakness in the bilateral upper extremities.  The pain in his

upper extremities he states is approximately equal right and left. It is worse

above the elbows, bilaterally extending principally to the area around the

shoulders in the middle of his back and what sounds like the region of his

scapulae.  He describes the pain as "burning and constricting," radiating into

his upper arms and shoulders. The pain is an 8 or 9 out of 10 on a constant

basis.

19.    In asking Mr. Atwood to somehow provide insight to the level of pain that he

is experiencing, he states, "I experience incomprehensible pain every time I

need to transfer to bed, chair or wheelchair."  Furthermore, he states that he

presently feels "incredibly weak" and where he had previously participated

in sporting activities, now, for a number of years, he has been unable to

walk and even has difficulty sitting erect. He reports that efforts to sit erect

are increasingly challenging and subject him to substantial, debilitating pain.

20.    Mr. Atwood reports having been treated with Tramadol from 2011 until

September 2020, when Nurse Practitioner Olmstead discontinued its use for

his pain relief.  In October 2020, Mr. Atwood was prescribed a lidocaine

patch and Tylenol. Despite providing no appreciable pain relief, this has

continued as his treatment until the present, with only some variances in the

Tylenol prescription and dosages and, crucially, a departure from this regimen while Mr. Atwood was placed in the prison complex's infirmary, as described below (¶ 30).

21.   Between around October 1, 2020 and May 5, 2021 (when he was admitted to the prison's infirmary), Mr. Atwood lacked access to a shower and was reduced to bathing himself in the sink of his cell. He describes that he has been afflicted recently with abrasions and/or bed sores on his buttocks.

22.   Mr. Atwood also relates a recent history of falling, secondary to weakness in his legs.  He relates a fall in November of 2020 when he hit his face and knocked himself out.  He suffered a similar fall in March 2021.  He is markedly limited in his capacity to transfer, stating that within the confines of his cell, he has had to crawl to the door rather than walk or transfer to his wheelchair.

23.   Mr. Atwood suffers constant pain. In order to minimize its severity, he seeks to continually maintain a seated posture, either slouching in his wheelchair or partially reclining on his back, in bed while attempting to sleep. This general condition causes considerable sleeping difficulties.  Since Fall 2020, he has experienced too much pain to sleep either on his side or his back. Lying flat on his back severely exacerbates his conditions, causing maximum pain.  He is only able to sleep sporadically, by positioning himself partially upright, propped up with blankets.

24. On January 8, 2021, MRI scans were conducted of Mr. Atwood, which are identified below (¶¶ 28-32).

25. On or around the next day, January 9, 2021, Mr. Atwood began suffering an extreme case of diarrhea, which he reported to Nurse Practitioner Olmstead, a care provider at his prison housing unit (Browning Unit in the Arizona State Prison Complex-Eyman). By January 13, 2021, this condition extremely intensified his back pain and caused spasms. Mr. Atwood was unable to leave his bed or roll onto his side for nearly a week. In order to accept meals and medication, he crawled or slid across his cell's urine and feces-smeared floor resulting from the prison's inattention to his condition. By the time his cell, clothing, and linens were given attention on or around January 19, 2021, Mr. Atwood reports that all were soiled.

26. On or around January 18, 2021, Nurse Practitioner Olmstead took a stool sample from Mr. Atwood in response to his diarrhea. It was determined that he had been suffering a staph infection for about ten days prior to its diagnosis and treatment.  During this period, Mr. Atwood reports having been backboarded and gurneyed to the health unit within his prison unit (Browning) on four separate dates between January 13 and 18.

27. On February 8, 2021, Nurse Practitioner Olmstead evaluated Mr. Atwood wherein she discussed potential further treatment that could include epidural steroid injections, further evaluation of effective pain management medication, and a neurosurgical consultation.  Mr. Atwood reports that a Dr.

Stewart, a physician affiliated with Centurion, the prison health care

provider, denied this surgical consultation and declined to otherwise offer a

treatment plan for his pain and its underlying causes. To date, the patient

has not had any neurosurgical consultations subsequent to the above-

referenced MRI scans.

28. Mr. Atwood has an extensive history of kidney stones.  On April 21, 2021,

Mr. Atwood was ambulanced with a 103.2° temperature to a hospital

emergency room outside the prison. Mr. Atwood reports that an emergency

room physician diagnosed him with untreated kidney and urinary tract

infections. Further, this neglect had caused severe sepsis. In the ensuing

weeks he was treated with antibiotics intravenously and orally.

29. Mr. Atwood was further diagnosed with kidney stones, which were causing

the complete obstruction of his kidneys, and was initially treated, over the

course of about a week, with two surgical procedures concerning a

nephrostomy on his right side. At around this time, Mr. Atwood was suffering

atrial fibrillation, for which he reports he also underwent a procedure under

sedation, though the details of this are not yet known. He was later returned

to the infirmary in the Central Unit of the Arizona State Prison Complex-

Florence.

30. On or around May 3, 2021, a Dr. Mahn, the Medical Director of the ASPC-

Florence infirmary, prescribed twice daily doses of Tramadol to address Mr.

Atwood's severe back pain and other discomfort. He was also prescribed Tylenol with Codeine (No.4) twice daily.

31. At the beginning of June, the nephrostomy was removed after a lithotripsy procedure to address the kidney stones.

32. On June 2, 2021, Mr. Atwood underwent a third kidney surgery during this brief period. On his return to the infirmary from that procedure, he fell and injured his elbow.

33. On June 4, 2021, Mr. Atwood was moved from the infirmary at the Central Unit back to the Browning Unit. Mr. Atwood reports that on that same day, Nurse Practitioner Olmstead discontinued the Tylenol with Codeine (No. 4) prescription, replacing it with No. 3. Nurse Practitioner Olmstead also adjusted Mr. Atwood's Tramadol prescription, reducing the daily dose from twice to once with the intention of weaning him completely.

34. In addition, during his initial days back at the Browning Unit, Mr. Atwood did not receive any Tramadol doses. Mr. Atwood reports the resumption of severe pain (a nine or ten) and significant decrease in his ability to transfer to and from his wheelchair. His sleeping is even more compromised as a result of this change in treatment and circumstances.


IMAGING STUDIES:

35. I have reviewed Mr. Atwood's cervical MRI scan of January 8, 2021. Findings include:

C2-C3 moderate canal stenosis with bilateral mild foraminal stenoses;

C3-C4 moderate canal stenosis with bilateral severe foraminal stenoses;

C4-C5 fusion with mild canal stenosis and bilateral severe foraminal stenoses;

C5-C6 surgical fusion with punctate myelomalacia of the cervical cord and bilateral severe foraminal stenoses;

C6-C7 moderate canal stenosis with bilateral severe foraminal stenoses;

C7-T1 patent canal with bilateral severe foraminal stenoses.

36. I have reviewed the lumbar MRI scan from the same date (Jan. 8), and findings include:

T12-L1 mild right-sided foraminal stenosis;

L1-L2 moderate bilateral foraminal stenoses;

L2-L3 mild right-sided, severe left-sided foraminal stenoses;

L3-L4 severe bilateral foraminal stenoses with bilateral L3 encroachment;

L4-L5 severe bilateral foraminal stenoses;

L5-S1 severe right-sided, moderate left-sided foraminal stenoses with bilateral L5 neural encroachment.

IMPRESSONS:

37. Mr. Atwood has severe cervical spondylosis with severe radicular symptoms to include, of great importance, C5-C6 myelomalacia.  He has apparently

overt radicular symptomatology as well as radiating pain, weakness, and motor dysfunction.

38. His lumbar spine problem is his most painful condition. He has advanced lumbar spondylosis with overt radiculopathies.  His neural symptomatology has contributed to the weakness that is limiting his ability to transfer and position, let alone ambulate.  In addition, the neural compression and degenerative spondylosis are highly painful, most acutely when prone or in an erect seated posture.

39. At this point in time, further treatment and evaluation are medically necessary and appropriate, and urgently needed.

40. Mr. Atwood needs to be seen immediately by an interventional pain specialist to ascertain whether fluoroscopically-guided injections such as epidural steroid injections would potentially provide some symptom relief from his basic, resting positions. Mr. Atwood has received Tramadol in the past and presently is being weaned of its use after his return to his housing unit (Browning Unit), from the Florence Complex's infirmary, where he was treated for the above-outlined kidney problems in April through early June 2021.

41. Before Mr. Atwood's admission to the prison infirmary in April, for months he had been denied Tramadol in the Browning Unit despite its prior effectiveness and its lack of side-effects over the span of many years. Currently, his Browning Unit care provider is eliminating Tramadol from Mr.

Atwood's pain management. This is expected to return Mr. Atwood's pain to an intolerable level, as described above (¶ 23). A prescribed moderate dose of Tramadol should be sustained.

42. It is expected that such treatments could assist to lower Mr. Atwood's high pain levels but would not meaningfully address his most acute problems stemming from the above-listed physical positioning.  The foregoing palliative measures would not resolve the underlying orthopedic cause of the pain.

43. Critically, Mr. Atwood needs a surgical consultation with an orthopedic spine surgeon or neurosurgeon to ascertain and clarify his surgical options.  He is an appropriate surgical candidate but I defer suggesting the exact surgical plan to a surgeon who would evaluate him in person, as well as review the foregoing imaging.  However, surgical intervention is likely necessary to address the underlying causes of his chronic pain.

44. In addition to the curative interventions suggested above, it is my professional opinion that it is imperative and humane that additional, palliative measures also be implemented on this patient's behalf immediately. These include lumbar and cervical orthosis, along with a residency setting where immediate hands-on wheelchair transferring assistance is continually available.

45.   If further information is required, I am available to provide more insights and

opinions on this case.  Additionally, the opinions rendered above could be

updated pending receipt of further information or data.


I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C.

§ 1746 (2).

   Executed this 21st day of June, 2021, in Salt Lake City, Utah.


Philip A. Davidson, MD
Board Certified Orthopedic Surgeon